UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Tammy Moore

    v.

Atrium Medical Corporation,
Maquet Cardiovascular US
Sales, LLC, and Getinge AB

Civil No. 18-cv-10-LM
Opinion No. 2019 DNH 163

In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)

O R D E R

Tammy Moore brings suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims, breach of warranty claims, and a claim for violation of consumer protection laws. Moore's suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. The case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss on a variety of grounds.[1] Moore objects.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**BACKGROUND**

Moore lived in Virginia during the events at issue in this case, and still lives there. She had surgery on February 17, 2015, at Stafford Hospital in Fredericksburg, Virginia, to repair a ventral hernia. Moore's physicians used a piece of C-QUR V-Patch mesh to repair the hernia. On May 19, 2015, Moore went back to Stafford Hospital because her hernia had recurred. She underwent another surgery to repair the hernia, during which the C-QUR mesh was removed. During the operation it was noted that "omental adhesions were taken down revealing the previous mesh mal-positioned and the hernia defect lateral." Doc. no. 62 at ¶ 84.

Atrium, which designed, marketed, and sold the C-QUR mesh that was implanted into Moore, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Moore alleges that Maquet and Getinge are responsible for Atrium's actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Moore alleges, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR mesh was safe and effective for that purpose. Moore further alleges that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Moore alleges claims of negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability and fitness of purpose (Count VI), and violation of consumer protection laws (Count VII). She seeks compensatory and enhanced damages.

## DISCUSSION

Defendants Atrium and Maquet contend that Virginia law applies to the liability portion of Moore's claims and that, under Virginia law, Counts I-IV and VII fail to state a claim for relief. Moore objects, arguing that it is too early for the court to engage in a choice-of-law analysis and that her claims are adequately pleaded.

I. Choice of Law

Defendants contend that Virginia has an interest in the case because Moore is a resident of the state and her alleged injury occurred there. They further contend that a choice-of-law analysis is necessary because Virginia's product liability law conflicts with New Hampshire's

product liability law and that, under New Hampshire's choice-of-law principles, Virginia law governs. Moore argues that a choice-of-law analysis is premature because additional factual development is necessary and that that if the court engages in a choice-of-law analysis, New Hampshire law governs.

### A. Timing of Choice of Law

Moore includes with her objection a section titled "Ripeness of Choice of Law Determination." Doc. no. 68 at 3. She cites cases where courts have found that discovery or development of the record was necessary to resolve the issue of a choice of law. Moore asserts that "case-specific depositions have not yet taken place and very little case-specific written discovery has taken place." Id. at 6.

Although the parties have not engaged in intensive fact discovery, Moore does not explain what specific information is lacking that is necessary for the choice-of-law analysis that can be obtained only through discovery. The locations of where defendants manufactured the allegedly defective products and where Moore had her surgeries are not in dispute. Therefore, Moore has not shown that the choice-of-law determination is premature, and the court employs the analysis.

### B. Standard

The parties agree that New Hampshire choice-of-law principles govern the choice of law in this bellwether case. See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law

principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000). An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

### C. Actual Conflict

New Hampshire and Virginia are interested states in this case. Defendants contend that Virginia law applies to the liability portions of all of Moore's claims. They argue that a conflict exists between Virginia and New Hampshire law because Virginia, unlike New Hampshire, does not recognize strict product liability claims.

Moore concedes that there is an actual conflict between Virginia and New Hampshire law with regard to her strict product liability claims (Counts II-IV). She argues, however, that defendants fail to identify a conflict with regard to any of her other claims. She contends that in the absence of such a showing with respect to her other claims, as required by the doctrine of dépeçage, New Hampshire law applies to the liability portion of those claims.

In their reply, defendants argue that the court should not apply the doctrine of dépeçage here because Moore's "claims are sufficiently intertwined." Doc. no. 69 at 4. The court

disagrees. First, in support of their argument that the court should not apply dépeçage when a plaintiff's claims are "intertwined," defendants cite two cases from the Eastern District of Wisconsin. See id. at n.2 (citing Stupak v. Hoffman-La Roche, Inc., 287 F. Supp. 2d 968, 971-72 (E.D. Wis. 2003) and Boomsma v. Star Transp., Inc., 202 F. Supp. 2d 869, 878 (E.D. Wis. 2002)). A recent case in that district suggests that the "inextricably intertwined" principle from these cases may not be a correct statement of the law. See PCM Salles Inv. Vantage Point Corp., No. 18-CV-1230-JPS, 2019 WL 3070078, at *5 n.1 (E.D. Wis. July 12, 2019) (noting that the "inextricably intertwined" theory came from no "source of law, but rather from a party's brief" and that "[n]o Wisconsin appellate courts, or the Seventh Circuit for that matter, have endorsed the 'inextricably intertwined' phrase").

Even if the court were inclined to follow defendants' questionable theory, they have not shown that the issues presented in Moore's product liability claims, breach of warranties claims, and violation of consumer protection law claim are inextricably intertwined. Indeed, the issues are different because, as defendants note in their briefs, the legal standards for the claims require different elements of proof. Therefore, dépeçage requires the court to consider the choice-of-law question separately for each claim.

Defendants have carried their burden to show an actual conflict between New Hampshire and Virginia law with respect to Moore's strict liability claims (Counts II-IV). Therefore, the court employs a choice-of-law analysis with respect to those claims.

With respect to the remaining claims, however, as Moore notes, defendants made no attempt in their memorandum in support of their motion to dismiss to show an actual conflict and have, therefore, failed to carry their burden on those claims. Because defendants have not carried their burden as to Moore's claims other than her claims for strict product liability, Counts

II-IV, the court will apply New Hampshire law to the liability portion of Moore's other claims. See Aftokinito, 2010 WL 3168295, at *3.

D. Choice of Law for Counts II-IV

New Hampshire uses a five-factor test for choice of law: "(1) predictability of results; (2) maintenance of reasonable orderliness and good relationship among the states in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own state's governmental interests rather than those of other states; and (5) the court's preference for what it regards as the sounder rule of law." Matter of Geraghty, 169 N.H. 404, 409 (2016). "The relative importance of each factor varies depending on the type of case." Lacaillade v. Loignon Champ-Carr, Inc., No. 10-cv-68-JD, 2011 WL 4738654, at *2 (D.N.H. Oct. 7, 2011).

The first three factors have little or no relevance in this case. The first factor—predictability of results—"is usually implicated only in suits involving contractual or similar consensual transactions and emphasizes the importance of applying to the parties' bargain or other dealings the law on which they agreed to rely at the outset." Stonyfield Farm, Inc. v. Agro-Farma, Inc., No. 08-cv-488-JL, 2009 WL 3255218, at *7 (D.N.H. Oct. 7, 2009) (internal quotation marks and citations omitted). Thus, the first factor has no weight here.

The second factor—maintenance of reasonable orderliness and good relationship among the states in our federal system—requires only that the court avoid applying the law of a state "which does not have substantial connection with the total facts and with the particular issue being litigated." Lessard v. Clarke, 143 N.H. 555, 557 (1999) (internal quotation marks and citation omitted). Both Virginia and New Hampshire have substantial connections with the facts in this case. Moore's surgeries occurred in Virginia, and Atrium is located in New Hampshire

and manufactures and sells its C-QUR mesh products here. Thus, the second factor has little relevance.

With respect to the third factor—simplification of the judicial task—the court is of course more accustomed to New Hampshire product liability law but could also apply Virginia law with little difficulty. See Lacaillade, 2011 WL 4738654, at *3 ("Although it may be easier for a court to apply the forum state's substantive law, it certainly cannot be argued that Maine's law regarding the relevant issue is so complex as to outweigh other competing considerations."). Therefore, none of the first three factors tips the balance on the choice-of-law analysis in this case.

The fourth factor considers the advancement of the forum state's governmental interests. This factor "becomes important only when New Hampshire has a particularly strong policy in reference to local rules of law, which the other state[']s laws under consideration would fail to achieve." Stonyfield Farm, 2009 WL 3255218, at *8 (internal quotation marks, citation, and alterations omitted). "Otherwise, New Hampshire's interest is limited to the fair and efficient administration of justice." Id. (internal quotation marks and citations omitted). Here, as in many other cases, this factor is of limited importance. To the extent it carries any weight, however, it favors the application of New Hampshire law. New Hampshire has an interest in the liability of a New Hampshire company for injuries caused by its products. See, e.g., Lacaillade, 2011 WL 4738654, at *3 n.4 (noting that New Hampshire has an interest in regulating the liability of its corporations); see also Turcotte v. Ford Motor Co., 494 F.2d 173, 178 (1st Cir. 1974). Therefore, the fourth factor has little relevance but, to the extent it carries any weight, it favors the application of New Hampshire law.

The fifth factor—the sounder rule of law—"allows the court, where everything else is equal, to choose to apply [a] state's rule that it regards as wiser, sounder, and better calculated to serve the total ends of justice, especially where one state's rule lies in the backwater of the modern stream." TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at *6 (D.N.H. Sept. 29, 2015) (internal quotation marks and citation omitted). "As such, [this factor] tends to play a tie-breaker role in close cases." Id. (internal quotation marks and citation omitted). The sounder rule of law depends on the policies behind the conflicting laws and the court's view of "the socio-economic facts of life at the time when the court speaks." Geraghty, 169 N.H. at 412.

Defendants gloss over the fifth factor in their memorandum in support of their motion to dismiss and in their reply brief. In support of their argument that Virginia has the sounder rule of law, defendants note merely that Moore had both her surgeries in Virginia. This fact, however, has no bearing on the fifth factor in New Hampshire's choice-of-law framework. See, e.g., LaBounty v. Am. Ins. Co., 122 N.H. 738, 743 (1982).

As is noted above, Virginia restricts the availability of strict product liability claims. In contrast, New Hampshire has chosen to put the risk of liability for injury caused by products on product manufacturers and sellers:

> The reasons for the evolution of the law in the area of products liability are many. We live in an era of national advertising and of nationwide distribution which can add or remove a product from our store shelves in a matter of days. Many of those nationally sold products contain chemical compounds and synthetics the side effects of which clearly cannot be anticipated. It is believed that if today's products are capable of causing illness or physical injury, the risk of liability is best borne by the companies that profited from their sale, rather than by the unfortunate individual consumers.

Heath v. Sears, Roebuck & Co., 123 N.H. 512, 521 (1983); see also Connelly v. Hyundai Motor Co., 351 F.3d 535, 539 (1st Cir. 2003) ("The New Hampshire Supreme Court has consistently

declined to adopt the rule urged by Hyundai—that a trial court may not instruct a jury on both strict liability and negligence counts in a product liability action."); State v. Exxon Mobil Corp., 168 N.H. 211, 247-50 (2015) (discussing the development of New Hampshire's product liability law and the efforts to avoid the "practically impossible burden" that many plaintiffs face in such cases).

In the absence of any showing by defendants that Virginia provides the sounder rule of law, the fifth factor weighs in favor of New Hampshire law and tips the balance in that direction. The court will therefore apply New Hampshire law to the liability portion of all claims in this case.

II. Merits of the Claims

Defendants move to dismiss Moore's negligence claim (Count I), strict liability claims (Counts II-IV) and violation of consumer protection laws claim (Count VII) under Virginia law. Because New Hampshire law governs the claims, defendants' arguments are not relevant.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss (doc. no. 64) is denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 23, 2019

cc: Counsel of Record